In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2891

United States of America,

Plaintiff-Appellee,

v.

Sidney A. Evans,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 CR 99--David F. Hamilton, Judge.

Argued November 28, 2001--Decided February 21, 2002


Before Harlington Wood, Jr., Kanne, and
Rovner, Circuit Judges.

Kanne, Circuit Judge. Sidney A. Evans
was indicted on one count of conspiring
to possess cocaine base with the intent
to distribute in violation of 21 U.S.C.
sec.sec. 841(a)(1) and 846. Evans moved
to suppress certain evidence obtained by
the government. After an evidentiary
hearing, the district court denied Evans'
motion. Subsequently, Evans entered into
a plea agreement, whereby Evans reserved
the right to appeal the district court's
adverse determination on his motion to
suppress. Evans now appeals that
determination. We affirm.

I. History
  Prior to July 20, 2000, a "parcel watch"
was placed with the Richmond, Indiana
Post Office for deliveries addressed to
"Kristy Kircher, 953 South 23rd Street,
Apt. 229, Richmond, Indiana 47374."
Pursuant to this parcel watch, the
Richmond Post Office was to notify Postal
Inspector Steve Sadowitz if any parcel
arrived for delivery to that particular
address. Sadowitz's office is located in
Indianapolis, Indiana. Sadowitz has been
a Postal Inspector for 11 years. He is
trained in interdiction of mail that
contains illegal drugs, has conducted
"thousands" of inspections of parcels
that contain illegal drugs, and has

interviewed subjects who send illegal drugs through the mail. Sadowitz placed this particular parcel watch because he had noticed that previous mailings to the address from Sacramento, California, contained handwritten labels with fictitious return addresses.

At about 8:00 a.m. on July 20, the Richmond Post Office notified Sadowitz that a parcel had arrived addressed to "Nicole Kircher, 953 South 23rd, Apt. 229, Richmond, Indiana 47374." Kristy Kircher's full name is Kristy Nicole Kircher. The parcel was a "two-day" Express Mail parcel to be delivered to Kircher on July 20 by 3:00 p.m. Sadowitz instructed the Richmond Post Office to place a "notice left" notation in the Express Mail tracking system for the parcel. A "notice left" notation is normally used after an unsuccessful delivery attempt. The notation alerts the intended recipient that a parcel delivery was attempted, and that the individual can pick up the parcel at the Post Office.

Sadowitz, who was at his Indianapolis office, and a supervisor from the Richmond Post Office each drove to a point halfway between Richmond and Indianapolis. Upon obtaining the parcel, Sadowitz observed several characteristics that caused him to believe that the parcel contained illegal drugs. The parcel had a handwritten label, which is rare on Express Mail packages, and the return address bore a northern California address. From past experience, Sadowitz knew that 75% of controlled substances seized from the mail were from that area.

Around noon, Sadowitz met with Detective Thomas Stitt, an Investigator/Narcotics Canine handler for the Indianapolis Police Department, and Stitt's Narcotic Detection Canine Wendy at the Indianapolis International Airport. The suspect parcel was placed on the floor with four similarly-sized parcels that did not contain drugs. Wendy examined all five parcels and alerted to the parcel addressed to Kircher. Based on this information, Sadowitz obtained a federal search warrant for the parcel on July 20, at 1:34 p.m. Inside the parcel, Sadowitz found a CD player that contained approximately 4.28 ounces of cocaine base ("crack").

A controlled delivery of the parcel was made on July 21, 2000. Kircher signed for the parcel. Several hours later, officers on surveillance observed Kircher leave her apartment carrying the parcel. Kircher drove to 107 North 18th Street in Richmond. As she approached the front door to that residence with the parcel in her hand, she was arrested. Evans and another man, Robert Harlan, were inside the residence. They were both subsequently arrested.

Evans was indicted for conspiring to possess crack with the intent to distribute. Evans moved to suppress the evidence obtained as a result of the seizure of the Express Mail parcel. At the suppression hearing, Evans testified that he had made arrangements to have Kircher receive the parcel and then to have her deliver the parcel to him. The district denied Evans' motion, finding that while Evans had a protectable privacy interest in the parcel, the length and scope of the brief detention was reasonable and did not violate Evans' Fourth Amendment rights. Subsequently, Evans entered into a plea agreement with the government. In the agreement, Evans pled guilty as charged, but reserved his right to appeal the district court's denial of his motion to suppress. Evans was sentenced to 120-months imprisonment, five years supervised release, and a fine of $1,000. Evans now appeals the district court's denial of his motion to suppress.

On appeal, Evans claims that his Fourth Amendment rights were violated when the Express Mail parcel was diverted from the ordinary flow of packages so that it could be subjected to a narcotics canine inspection. First, Evans argues that the government "seized" the parcel at 8:00 a.m. on July 20. Because this "seizure" was more than a brief investigatory detention, Evans contends that probable cause for seizing the parcel was required. Additionally, Evans argues that because he had a contractually based expectation that the parcel would be delivered by 3:00 p.m. on July 20, the fact that the parcel was not delivered until the morning on July 21 interfered with Evans' possessory interest in the parcel. Evans claims that such an interference can only be justified upon a showing of probable cause. Moreover,

Evans avers that at the time of the seizure, the facts known by the government were insufficient to establish a reasonable suspicion justifying any length detention.

## II. Analysis

On appeal, the parties assume that Evans possesses a Fourth Amendment privacy interest in a parcel that he arranged to have sent via Express Mail to his girlfriend, who understood that she was supposed to turn the sealed parcel over to Evans. That such an interest is protected by the Fourth Amendment has not been directly established by this circuit. See United States v. Koenig, 856 F.2d 843, 846 (7th Cir. 1988). In this case, after a lengthy analysis, the district court found that Evans made arrangements that subjectively and objectively gave him a reasonable expectation of privacy against having the parcel addressed to Kircher opened and inspected by anyone else. Although we recognize that this is a threshold question to any Fourth Amendment analysis, because the parties did not brief or argue this issue and because we find that reasonable suspicion justified the detention of the parcel, we save this question for another day.

In United States v. Van Leeuwen, the Supreme Court recognized an individual's Fourth Amendment right to be free from unreasonable searches and seizures of items they place in the mail. 397 U.S. 249, 251, 90 S. Ct. 1029, 25 L. Ed. 2d 282 (1970). However, upon reasonable suspicion that the package contains contraband, law enforcement authorities may detain the package for a reasonable length of time while investigating the package. See id. at 252-53 (finding a 29-hour delay to be reasonable); United States v. Dennis, 115 F.3d 524, 531-32 (7th Cir. 1997). Thus, the detention here will be upheld if Sadowitz reasonablysuspected that the parcel contained contraband and if the duration of the detention was reasonable. See Dennis, 115 F.3d at 531-32.

We review a determination of reasonable suspicion de novo. See Ornelas v. United States, 517 U.S. 690, 699, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996); Dennis, 115 F.3d at 532. A reasonable suspicion

determination requires "law enforcement authorities to articulate the specific characteristics exhibited by the . . . object to be detained which aroused the authorities' suspicion in the particular case before us, and we determine whether those characteristics would reasonably arouse suspicion under the circumstances presented in the case." Dennis, 115 F.3d at 532. "[I]n certain circumstances wholly lawful conduct may justify an officer's suspicion that criminal activity is afoot. . . . Moreover, circumstances which appear innocent to the outside observer may suggest criminal activity to experienced law enforcement personnel, and in determining whetherreasonable suspicion exists, law enforcement authorities may assess these circumstances in light of their experience." Id. at 533 (citations omitted).

In Dennis, the postal inspector explained that, based on his experience as a postal inspector, a certain parcel aroused his suspicion because the parcel was "heavily taped, had been sent from a private person to another private person, had been mailed from Los Angeles, a city known to be a source city for narcotics distribution, and had been mailed from a zip code different than the zip code listed in the return address." Id. at 532. Similarly, the parcel in this case was from California, which Sadowitz recognized as a known source area for illegal drugs. Moreover, the label on the parcel was handwritten and as Sadowitz explained, handwritten labels are unusual on Express Mail parcels. Here, we find that Sadowitz assessed the circumstances in light of his experience. While a handwritten label and a California return address may appear innocent enough, Sadowitz knew from experience that these characteristics were consistent with parcels which contain contraband. Furthermore, Sadowitz articulated that he had knowledge that this particular address had on previous occasions received parcels with fictitious return addresses. We find that these factors considered in light of Sadowitz's 11 years experience as a postal inspector and as articulated by Sadowitz were sufficient to arouse reasonable suspicion.

This court recognizes, however, that at

some point in time, a detention of mail extends from a stop to a seizure requiring probable cause. See United States v. Sharpe, 470 U.S. 675, 685, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985); Dennis, 115 F.3d at 533. Therefore, the next step in our inquiry is to determine whether Sadowitz detained the parcel for an unreasonably long period of time before obtaining a search warrant. See Dennis, 115 F.3d at 533; United States v. Mayomi, 873 F.2d 1049, 1053-54 (7th Cir. 1989). "Brevity of a detention is an important factor in determining whether it may be justified by reasonable suspicion only. . . . [W]e also consider whether the police diligently pursued their investigation." Dennis, 115 F.3d at 533 (citation omitted).

In Mayomi, we stated that detaining two letters for forty-eight hours to allow the inspector to subject the letters to a canine inspection was brief enough to be sustained by reasonable suspicion. 873 F.2d at 1054. Additionally, we have held that law enforcement authorities are not required to have a canine unit present at every location where a canine inspection is probable or possible. See United States v. Borys, 766 F.2d 304, 314 (7th Cir. 1985). "Diligence . . . is fairly characterized by steady, earnest, energetic, and attentive application and effort toward a predetermined end." United States v. LaFrance, 879 F.2d 1, 8 (1st Cir. 1989). Here, we find that Sadowitz acted diligently and that the detention was brief enough to be sustained by reasonable suspicion. In order to be efficient, Sadowitz met the supervisor from the Richmond Post Office halfway between Richmond and Indianapolis. Immediately thereafter, Sadowitz transported the parcel to Indianapolis International Airport for a narcotics canine inspection. Evans argues that a Narcotics Canine Unit was available in Dayton, Ohio. While the distance to Dayton, Ohio may in fact be shorter than the drive to Indianapolis International Airport, we do not find that this information means that Sadowitz failed to act diligently. Rather, we find that Sadowitz diligently pursued his investigation and that the detention of the Express Mail parcel was reasonable.

III. Conclusion

For the foregoing reasons, we AFFIRM the district court's denial of Evans' motion to suppress.